PEOPLE v. DUNN et al.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

1. JURY—CONSTITUTIONAL LAW—SPECIAL ACT.
   Laws 1896, c. 378, providing for special jurors in criminal cases in each county having a population of 500,000 or more, is not in contravention of section 18 of article 3 of the constitution, as being a private or local bill, but is a general law, and valid

2. SAME.
   Nor does it conflict with section 2 of article 1, declaring inviolate the trial by jury as heretofore used, for that only requires a common-law jury, the method of attaining which is left, subject to certain principles, to the legislature.

3. SAME—DUE PROCESS OF LAW.
   Nor does the limited and mainly ministerial power which it gives to the special commissioner of jurors operate to deprive an accused of due process of law.

4. SAME—RIGHT OF APPEAL.
   Nor does the fact that the act allows the accused no appeal from the decision of the trial court upon his challenges affect its constitutionality, the right of appeal not being guarantied by the constitution.

Frank Dunn and others were indicted for crime. Motion for a special jury, under chapter 378, Laws 1896, entitled "An act providing

for a special jury in criminal cases in each county having a certain population, and for the mode of selecting and procuring such special juries; also creating a special jury commissioner for each of said counties and regulating and prescribing his duties." Motion granted.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles E. Le Barbier, for the motion.
David Mitchell, opposed.

PER CURIAM. The defendants, in support of their claim that the act in question is unconstitutional, seem to rely upon the following provisions of the constitution: Const. art. 3, § 18; Id. art. 1, §§ 2, 6. As to the first, namely, that which provides that the legislature shall not pass a private or local bill for the selecting, drawing, summoning, or impaneling of grand or petit jurors, we need only say that this is not such a law. It is clearly a "general law," as that term has been repeatedly defined by the court of appeals in an unbroken succession of authorities. In re New York El. R. Co., 70 N. Y. 327; In re Church, 92 N. Y. 1; People v. Squire, 107 N. Y. 593, 14 N. E. 820; Ferguson v. Ross, 126 N. Y. 459, 27 N. E. 954; Sun Printing & Publishing Ass'n v. City of New York, 8 App. Div. 230, 40 N. Y. Supp. 607, affirmed 152 N. Y. 257, 46 N. E. 499.

Nor does it conflict with the second of these provisions, namely, that which declares that the trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever. It deprives no man, either directly or indirectly, of a trial by a common-law jury of his peers. In fact, it aims at furnishing to the accused an additional guaranty of just such a jury; that is, a jury of 12 of his intelligent and impartial fellowmen. All men being equal before the law, such a jury is certainly a jury of every man's peers. There can be no other test. The illiterate accused is surely not entitled to a jury of illiterates, nor the learned accused to a jury of scholars. All are entitled to an impartial jury of good understanding. How that shall be attained is left to the legislative judgment, subject only to certain fundamental principles. There is no express constitutional requirement as to the qualifications of the trial jury. Even intelligence and impartiality are but implied. It is the common-law jury which is to to be kept inviolate. In England that always embraced, and still embraces, special as well as common-law juries. Thomp. & M. Jur. § 12, and cases cited. And in this state we find early and continuous provisions for struck juries. Laws 1786, c. 41; Laws 1793, c. 56; Laws 1796, c. 46; Laws 1801, c. 98; 1 Rev. Laws, p. 333, § 22; Laws 1857, c. 530; 2 Rev. St. (Edmonds' Ed.) p. 435; Code Civ. Proc. §§ 1063–1071. The claim of counsel is that the jury shall be drawn from the body of the county. Theoretically this is true, but practically it is, and ever has been, drawn from a very meager and imperfect representation of that body. When so drawn, it is, in a legal sense, drawn from the body of the county. The system may doubtless be bettered from time to time, but, in the nature of things, it can hardly be made perfect. We cannot expect the selection and placing upon

the lists of every qualified juror in the county. , The constitution does not require this, nor does it even require an absolutely perfect representation of the entire body. All this must necessarily be relative. The "body of the county" is, therefore, but a generic term, applied to the representation of the citizens of the vicinage, embodied in the lists of qualified jurors, selected by officers appointed by law. Whether that representation, on a primary examination by these officers, be embodied in a general list, or, upon a secondary examination by the same or other officers, in a less extensive list, the inherent character of the selections is the same. They are still representative of the body of the county; and a trial jury drawn therefrom, if impartial and indifferent, is such a jury as the constitution guaranties.

As to the third provision, it is apparently contended that under this act an accused is deprived of due process of law, because the commissioner exercises a power of selection which may possibly be abused. That, at least, is what seems to be suggested. If this were the ordinary struck-jury system, where a panel is specially selected for a given case, there might be force in the suggestion of a possible abuse of power. We are unable, however, to see how the commissioner, under the system inaugurated by this act, can possibly abuse his power to the prejudice of an accused. He exercises no function other than such as is exercised by the ordinary commissioner of jurors. The latter selects the trial jurors for the county, and he alone decides upon their qualifications and exemptions. Code Civ. Proc. § 1090. The special jury commissioner, in the exercise of his functions, is strictly limited to the selections already made by the ordinary jury commissioner. His lists must be made up from the regular jury lists. He cannot add to the latter, nor place upon his own lists a single outside name. He is thus empowered simply to bring further scrutiny to bear upon the ordinary jury commissioner's selections. This is the sum and substance of his power, and its exercise is carefully regulated by express statutory mandate. His duty, as was said of another official in People v. Petrea, 92 N. Y. 140, is "in the main ministerial." The ordinary jury commissioner does not select the particular panel which is summoned to try a man. Still less does the special jury commissioner. Nor does the latter exercise any judicial function as to the qualifications of the 12 men who may ultimately be chosen to serve. His work is preparatory and tentative. In the end, the court alone exercises the judicial function of deciding upon the qualifications of the jurors, and it does so entirely unhampered by the previous examination and inquiry of the commissioner. All the usual challenges, it will be observed, apply to the special jury panel. One of the main purposes of the act would, therefore, seem to be to provide a practical method of saving the time of courts in the process of procuring a competent and impartial jury in exceptional cases. We have been referred to no constitutional provision, and we know of none, which prohibits the legislature from thus facilitating the administration of justice. The Code and the volumes of Session Laws are full of enactments regulating the details of the jury system throughout the state. These details vary in different parts of the state, notably in the counties of New York and Kings. They are more or

less adapted to special conditions. The constitutionality of these varying details, so far as the principle of preserving trial by jury inviolate is concerned, has never been questioned. So long as they maintain the substantial right and the essential features of trial by jury, they are not unconstitutional merely because they vary in the methods whereby that substantial right is secured. These methods may be embodied; as here, in general laws, or even in amendments to existing local laws, in matters of detail (People v. Petrea, supra); and yet they are not violative of any constitutional provision. Such amendments, as was said in the Petrea Case, are not within the mischief aimed at by the provision prohibiting a local or private bill for the selection of jurors. A brief illustration will suffice to show how reasonable and sensible is this practical view of the subject. Take, for instance, the case of a man who has conscientious scruples against the death penalty. He may be a perfectly competent juror in all other than capital cases. A man, too, whose mind is so constituted that he cannot, as a juror, rid himself of the opinions or impressions derived from newspaper hearsay, may also be a competent juror in the great majority of cases. Such men should remain upon the jury lists. It is only in exceptional cases that they are disqualified. But why should they be from time to time drawn in exceptional cases and subjected to examinations which unvaryingly end in their rejection? Whole panels are thus frequently depleted. Fresh panels are issued, with no better result. These successive panels naturally produce even fewer jurors than the first, for notices can rarely be served personally upon those thus hastily summoned. But little time is afforded either to the notice-server or the juror. Then, too, the same jurors are frequently summoned and examined in successive cases, year in and year out, with the same result. If a man has conscientious scruples against the death penalty, it would seem reasonable that he should declare them once for all. Why not to a commissioner authorized to receive his deposition? Why must the same man be endlessly brought into court to say the same thing? And, if such a man is an otherwise competent juror, why should he not remain on the general list, and be excluded from the special list? The same observations apply to all the limitations relating to the special list which are grouped in this act. The object was evidently to lessen the delays and difficulties attendant upon the trial of exceptional cases, and to eliminate, as far as may be, from the panels drawn in such cases, those who, owing to their honest idiosyncracies, are plainly disqualified. Having done this, the act leaves the selection of the jury precisely where it is in ordinary cases. Whether the jurors be qualified or disqualified, partial or impartial, is left solely to the judicial judgment, upon precisely the same inquiry as in the case of an ordinary panel. The area of original selection is lessened. That, however, applies only to the panel. And thus the chances of ignorance or partiality or other disqualifications are diminished. But the chance of securing from a wider area of original selection an ignorant or partial jury is surely not a substantial right of the accused, guarantied to him by either the spirit or the letter of the constitution.

These views are fully supported by the authorities in this state and' elsewhere, as well as in the supreme court of the United States. Thus, in Stokes v. People, 53 N. Y. 164, it was held that the legislature· may constitutionally change the law as to the mode of procuring and' impaneling a jury, subject only to the constitutional obligation to preserve the right of trial by an impartial jury. See, also, Gardner v. People, 6 Parker, 155, and Walter v. People, 32' N. Y. 147. The· ablest and most instructive examination of the constitutional power to provide for struck juries to which our attention has been called is in the case of Lommen v. Light Co. (Minn.) 68 N. W. 53. The whole· subject was there discussed by Mr. Justice Mitchell, and the conclusion arrived at that statutes of this kind do not impair the common-law right of trial by jury, as known and understood in American constitutional law. The same doctrine was maintained in Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, and State v. Slover, 134 Mo. 607, 36 S. W. 50; and these cases expressly hold that the legislature may constitutionally vary the jury system in different parts of the same state, so long as it does not infringe any of the fundamental features· of trial by jury. In Hayes v. Missouri it was held that an act allowing the people 15 peremptory challenges in capital cases in cities having over 100,000 inhabitants; while only 8 were permitted elsewhere,. was constitutional. Field, J., said:

"In this country the power of the legislature of a state to prescribe the number of peremptory challenges is limited only by the necessity of having an· impartial jury. * * * The accused cannot complain, if he is still tried by an: impartial jury. He can demand nothing more."

In the Slover Case a special system was under consideration applying only to counties containing more than 50,000, and less than 300,- 000, inhabitants, and it was held constitutional. Gantt, J., said:'

"By 'the right of trial by jury as heretofore enjoyed' in our organic law is. meant that the people of this commonwealth shall not be denied the essential features of the jury system as understood and practiced at the common law. * * * Unquestionably, under the guise of regulation, legislation which, in effect, would destroy the great feature of the common-law jury would not be· tolerated; but no reason can be given why the people in their sovereign capacity may not improve the method of selecting a jury by excluding from the· list those unfit by crime or immorality, or by repealing the freehold qualification of the common law, or any property qualification."

The only other point made by the defendants is that the act deprives them of an appeal from the decision of the trial court upon their challenges. There is nothing in this point. The right of appeal is ,not guarantied by the constitution. That is a matter entirely within the legislative judgment. Even the general right to an appeal, in the absence of a constitutional provision to the contrary, is but a privilege which the legislature may take away. Ex parte McCardle, 7 Wall. 506; Railroad Co. v. Grant, 98 U. S. 398; Grover v. Coon, 1 N. Y. 536; Croveno v. Railroad Co., 150 N. Y. 225, 44 N. E. 968.

As it is conceded that a proper case for a special jury is made out upon the affidavits, and we see no reason for questioning the constitutionality of the act, the motion should be granted.