# Court of Appeals.

November, 1904.

## THE PEOPLE v. WILLIAM SPENCER OTHERWISE CALLED WILLIAM ROGERS.

(179 N. Y. 408.)

1. MURDER—WHEN VERDICT IS CONCLUSIVE AS TO SANITY OF DEFENDANT.

Upon the trial of an indictment for murder where there is evidence tending to prove the defense of insanity, and the court in-

structs the jury that the affirmative is with the prosecution to prove that the defendant was sane when he committed the crime, and if there is any reasonable doubt upon that question he is entitled to the benefit of it, in the absence of any element showing that it was against the weight of evidence or that it was influenced by mistake, error or prejudice, a verdict convicting the defendant of the crime of murder in the first degree is conclusive upon that issue.

2. RULE FOR EXAMINATION OF LAY WITNESSES AS TO SANITY OF DEFENDANT.

lay witness may be examined as to facts within his knowledge bearing upon the question of sanity and may then characterize the acts of which he testifies as rational or irrational; his opinion, however, upon the general question of the state of a prisoner's mind and his mental condition is inadmissible; questions, therefore, as to how his conduct, acts and words impressed such witness with respect to their being rational or irrational are properly excluded; where, however, the court, after excluding questions, recalls a witness and gives counsel permission to examine him as to the matter contained therein, which he declines to do, the error, if any, is cured.

3. TIME OF SENTENCE—CODE CRIM. PRO. § 472.

A defendant may be sentenced upon the same day the verdict is rendered if the court does not intend to remain in session longer.

APPEAL from a judgment of the Court of General Sessions of the Peace in the county of New York, rendered July 9, 1903, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

James D. McClelland for appellant. It was error on the part of the court to sustain the objection of the district attorney to the questions put to the witness, Hattie Ross, by the counsel for the defense. (People v. McElvaine, 125 N. Y. 601; Langley v. Wadsworth, 99 N. Y. 63; 3 Jones on Ev. 1806, § 821; People v. Conroy, 97 N. Y. 66; Garfield v. Kirk, 65 Barb. 464; State v. Hallenback, 67 Vt. 34.) The

court erred in its rulings respecting the examination of Dr. Van Giesen.    (3 Jones on Ev. 1830, § 832; State v. Hallenback, 67 Vt. 34.)   The verdict was against evidence and justice requires that defendant have a new trial.   (People v. Waters, 32 N. Y. 41; People v. Mull, 167 N. Y. 247; People v. Koerner, 154 N. Y. 355; People v. Bissert, 71 App. Div. 118; People v. Fielding, 158 N. Y. 551; People v. Hill, 37 App. Div. 327; People v. Smith, 162 N. Y. 520; People v. Priori, 163 N. Y. 99; People v. Williams, 18 Cal. 187; People v. Devine, 44 Cal. 452.)

William Travers Jerome, District Attorney (Howard S. Gans of counsel), for respondent.   The defendant's sanity was established beyond a reasonable doubt.   (Brotherton v. People, 75 N. Y. 159; People v. Tobin, 176 N. Y. 278; People v. Ennis, 176 N. Y. 289.)   Any error that may have been involved in limiting the examination of the witnesses Ross and Van Giesen was cured by their recall.   (People v. Strait, 148 N. Y. 569; Paine v. Aldrich, 133 N. Y. 547.)   No objection was taken to the matter revealed by Dr. MacDonald, as a result of his conversations with the defendant, and their reception in evidence did not constitute reversible error.   (People v. Hoch, 150 N. Y. 291; People v. Koerner, 154 N. Y. 355.)   It was not prejudicial error to proceed to pronounce judgment immediately upon the reception of the verdict without adjourning for an interval of two days.   (Code Crim. Pro. § 432; Paine v. Aldrich, 133 N. Y. 544; Matter of Rice, 81 App. Div. 223.)

MARTIN, J.

The indictment charges that on the fifteenth day of June, 1903, the defendant, with malice aforethought, shot and killed one Charles S. McFarlane.   The proof discloses that

on that day the defendant shot and killed McFarlane. The shooting occurred in the corridors of the Criminal Court building in the city of New York, where the decedent and another had appeared on that day for the purpose of prosecuting the defendant upon the charge of violating the policy law. This charge was preferred by the decedent, who was an agent of the Anti-Policy Society, and it was to him that the defendant attributed all his troubles in that respect. He came to the building knowing that the decedent was expected at that time. He was armed, although it was not his daily custom to carry a revolver, but he carried one occasionally. He waited in the corridor, watching for the arrival of McFarlane, against whom he had made threats of violence. When he discovered the decedent he approached him deliberately, waited until he was within a few feet of him, and then shot and killed him. After a scuffle with another agent of the society, whom he also shot, he followed the decedent and shot him twice more, inflicting a second wound, which, like the first, was sufficient to cause death. After the shooting, when interrogated by the officers, he was calm, inquired about the liability of his bondsman by reason of his non-appearance at the trial of the policy prosecution, and suggested that the shooting was in self-defense. He expressed regret that he had shot Bray, the other agent of the society, and asserted that McFarlane was the only one he intended to do harm. He also claimed that McFarlane had been hounding him ; that he was not "chicken-hearted," and that he "would just as soon go to the chair for something as to the jail for nothing."

These facts were undenied, and no question was raised upon the trial as to the killing of the decedent, or the sufficiency of the evidence upon the question of intent, deliberation and premeditation. The sole defense interposed was that of insanity, and proof was introduced upon the trial tending to show that the defendant was a paretic and insane

when the homicide was committed. To support that defense, the defendant called several lay witnesses with whom he was acquainted, who testified to facts tending to establish that defense. In addition, several medical experts were called, who gave evidence in reply to hypothetical questions which assumed certain facts, among others that there was evidence of the defendant's having had epilepsy and that he was in the initial stages of paresis. In answer to such hypothetical questions the expert witnesses gave the opinion that the defendant was insane and irresponsible for his acts in killing the decedent. Upon the other hand, there was proof by the prosecution as to the defendant's conduct and the various acts performed by him, together with the testimony of two experts who gave the opinion that he was sane at the time of the commission of the offense. Thus the evidence presented a question of fact which was practically the only question in the case and was whether the defendant was sane at the time of the homicide. That question was submitted to the jury in a charge which was at least fair to the defendant, and the jury found a verdict against him. Although it is true that the law presumes every individual to be sane, and upon this presumption the prosecution may rest without proof, yet, in a case where the defense is insanity, while the prisoner is required to establish it, still, if there is evidence tending to prove that defense, the general question is presented whether the crime was committed by a person responsible for his acts, and upon that question the affirmative is with the People. (Brotherton v. People, 75 N. Y. 159; People v. Tobin, 176 N. Y. 278, 285.)

The learned recorder so instructed the jury, and also charged that if there was any reasonable doubt upon that question, the benefit of it was to be given to the defendant, and they were to acquit him upon that ground. Manifestly, whether the defendant was, at the time of the homicide,

sane or insane was a question of fact for the jury. "On the review of a conviction of murder in the first degree, where the defense of insanity was interposed, the verdict will be regarded as conclusive upon that issue, in the absence of such elements in the case as show that the verdict was against the weight of evidence, or that it was influenced by some mistake, error or prejudice." (People v. Hoch, 150 N. Y. 291; People v. Taylor, 138 N. Y. 398; People v. Sutherland, 154 N. Y. 345; People v. Kennedy, 159 N. Y. 346, 352.) Therefore, under the doctrine of these authorities, as there is no sufficient ground to hold that the verdict was against the weight of evidence, or that it was influenced by mistake, error or prejudice, it must be treated as final and conclusive upon that issue.

The appellant also claims that the court erred in excluding questions put to the witness Hattie Ross by his counsel. The following questions were asked the witness: "Q. Miss Ross, how did the defendant's conduct impress you that day?" Objected to and objection sustained. "Q. State whether or not his manner and his speech, and the way he displayed himself to you, in words and acts, was that of a rational human being or not." This was also objected to on the ground that no foundation had been laid, and the objection was sustained. The counsel then asked: "Q. Did he impress you, Miss Ross, as being a rational or irrational person?" That was likewise objected to and excluded.

The rule as to the examination of a lay witness is that he may be examined as to facts within his own knowledge bearing upon the question of sanity, and may then be permitted to characterize the acts of which he testifies as rational or irrational. He may not, however, express an opinion upon the general question whether the mind of the individual was sound or unsound. The opinion of witnesses who are not experts on the general question of the state of a prisoner's mind and his mental condition, is inadmissible. According-

ly, where a non-expert was asked, ''From what you saw of him that night, what impression did his words and acts make upon your mind? What impression as to his condition of mind did his conduct and acts and words make upon you at the time?'' These questions were held to be improper and inadmissible and that such evidence was properly excluded. (Real v. People, 42 N. Y. 270; People v. Strait, 148 N. Y. 566.)

Thus it is seen that the questions asked the witness Ross were not within the rule permitting a lay witness to testify as to acts of the prisoner and to give an impression as to whether such acts were rational or irrational, but related to the defendant's condition of mind, the witness being, in effect, asked to state whether his words and acts were those of a rational human being, and whether he impressed the witness as being a rational or irrational person. Clearly that evidence was inadmissible. But there is another answer to this ruling, which is, that the court subsequently called Miss Ross to the stand, and stated to the counsel for the defendant that he might examine her as to the matters contained in the questions which were excluded. This the counsel for the defendant declined to do. We are of the opinion not only that the questions asked by the defendant's counsel were properly rejected, but, when the court gave him an opportunity to ask the witness those questions, which was declined, if there were error in the ruling, it was thereby eliminated.

The appellant also claims that the court erred in asking Dr. Van Giesen a question based upon the evidence of another witness as testing the opinion of the doctor as to the defendant's insanity. The court stated the evidence of such other witness, which was to the effect that he (the witness) asked the defendant why he shot McFarlane; that he hesitated for a moment and then said that McFarlane had been hounding him; that he arrested him about seven weeks

prior, and that he had been hounding him ever since; that he said he had shot McFarlane because he had been hounding him; that he was no chicken-hearted nigger; that he would just as soon go to the electric chair for something as to go to jail for nothing. The question asked was whether, "Assuming that to be true, can you state, in your opinion, if that answer by the defendant did not show a cognition, on his part, that he had committed a wrong in shooting McFarlane?" To that the doctor answered he did not think it necessarily showed that he was aware that he was committing a wrong when he shot McFarlane. The court then said: "That is not my question, doctor. That is not an answer to my question, doctor." The witness then said : "May I have the question repeated?" It was repeated by the stenographer, and the witness answered : "I don't think it does, at the time. He may have such a cognition afterwards." The court again repeated that it meant at the time he made the answer. The attorney for the defendant asked the court to take the duration of time into consideration after the shooting, to which the court replied, "No; I will simply confine myself to my question now." The question was then repeated as follows : "At the time that the statement was made to Roundsman Kelleher, according to the witness, assuming the statement of the witness, which has been read to you, to be true, did that answer or statement indicate a cognition, at that time, on his part, that he had committed a wrong when he shot McFarlane?" The witness then said: "Did your Honor say indicate? The court: Indicate or manifest. A. It indicates, yes. Q. It does indicate it? A. Yes, sir." The defendant then took an exception to the court's question upon the ground it did not cover particularly the state of facts that the record presented, because there was an interval between the shooting. To this the court replied: "No, that will do. There was no objection made to the question or exception taken, but you may have an

exception now." The counsel for the defendant then asked leave to recall Dr. Van Giesen, which the court refused, to which an exception was taken.

But it appears, however, that Dr. Van Giesen was immediately recalled, and the defendant's counsel sought to further question him, which the court declined to permit, but subsequently he was again recalled, and the defendant was permitted to put the question which he desired to ask and which the court at first declined to permit. The stenographer then repeated the question in full, when the defendant's counsel said: "Now, what did you understand to be the meaning of that word cognition in that connection? A. To have cognition of a thing is to have knowledge and consciousness of it. Q. But in that answer did you mean to have the court and jury understand that that extended to the operation of the act itself, of the killing and the shooting?" That was objected to as unintelligible, and the objection was sustained. The court then inquired if that was all from the witness, and the defendant's counsel replied it was.

It seems quite apparent that the question by the defendant's counsel was not as intelligible as it should have been. It is somewhat difficult to understand the purport of the last question, and when the court excluded the evidence upon the ground that it was unintelligible, it seems quite manifest that the defendant's counsel was more anxious for an exception than to state the question so that it should be understood by the court and counsel. We find in this ruling no error which affected the substantial rights of the defendant, or that would justify an interference with the judgment upon that ground.

The defendant also claims that the verdict was against the evidence, and that justice requires a new trial. We are of the opinion that under the evidence the issue involved only a question of fact for the jury; that its determination was final, and that nothing appears upon the record which would

justify this court in concluding that the verdict was against the evidence or that justice required a new trial.

Another contention by the defendant is that the conduct of the district attorney was of such a character as to require the granting of a new trial. We have examined the record in vain to find any evidence of such action upon his part as would justify the granting of a new trial upon that ground, as there is nothing to show that the case falls within the principle of People v. Mull (167 N. Y. 247) or any of the the cases cited, as bearing upon that question.

Again, the defendant claims that the judgment should be reversed for the reason that he was sentenced on the same day that the jury found its verdict, and was not given the two days provided for by section 472 of the Code of Criminal Procedure. That section provides that the time appointed for pronouncing judgment "must be at least two days after the verdict, if the court intend to remain in session so long, or, if not, as remote a time as can reasonably be allowed." It appears that this was the last case tried at the term held for June, 1903, which had extended into the month of July, and that the court was not to remain longer in session. Hence, under the provisions of that section, it is apparent that the court had the right to sentence the defendant at once without continuing its session for any longer time, in view of the fact that the court was about to end. Moreover, it is to be observed that there was no necessity for making a motion for a new trial before judgment was pronounced, as this was a case in which the judgment was of death, and the motion for a new trial could be made at any time before the defendant's execution. (§ 466, Code Criminal Procedure.)

The defendant also claims that the court erred in permitting the witness Hattie Ross to be recalled during the examination of Dr. Prout, who was required to stand aside until

such examination was had, provided the defendant should conclude to examine her. It is obvious that the question of the order of proof and the order in which the witnesses should be called, as well as the right to require the witness Prout to stand aside until the evidence of Miss Ross should be taken, was within the discretion of the court and not the subject of review here.

Having reviewed all the questions presented by the defendant upon this appeal, and having found none which would justify this court in disturbing the verdict of the jury or the judgment appealed from, it follows that the judgment of conviction must be affirmed.

CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT and WERNER, JJ., concur; VANN, J., not voting.

Judgment of conviction affirmed.