## Court of Appeals.

May 2, 1905.

# MATTER OF WILLIAM H. JONES AND OTHERS, ETC.

(181 N. Y. 389.)

1. APPEAL—RIGHT OF.

There is no inherent right of appeal. Appeals in criminal matters are governed by §§ 515 to 533, Code Crim. Proc., and unless they authorize an appeal the Court of Appeals has no jurisdiction.

2. APPEALABILITY OF ORDER.

The Court of Appeals has no power to review an order of the Appellate Division affirming an order of a County Court denying a motion made by a board of supervisors to have the County Court set aside a presentment of a grand jury censuring them for their alleged neglect in keeping proper records of the minutes of their proceedings; since the motion was not made in an action, either civil or criminal, and is not a motion in a civil or criminal proceeding authorized by any statute, but is, in effect, an application to the County Court that it should exercise its control over its records by striking therefrom a paper alleged to be scandalous; and there being no inherent right of appeal and none allowed by statute from the order of the Appellate Division, the appeal therefrom must be dismissed.

Matter of Jones, 101 App. Div. 55; s. c. *ante*, p. 59, appeal dismissed.

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 27, 1905, which affirmed an order of the Nassau County Court denying the motion of petitioners to set aside and quash a presentment of the grand jury of that county against them made at the term of the County Court for November, 1903.

The facts, so far as material, are stated in the opinion.

Halstead Scudder for appellants. A motion to set aside or quash the presentment in controversy on the ground that it is without warrant in law, involves a substantial right of the petitioners, and is not addressed to the discretion of the court.

(Matter of Choate, 41 Alb. L. J. 287; People v. Hackley, 24 N. Y. 74; People v. Naughton, 38 How. Pr. 430; People ex rel. v. Kelley, 21 How. Pr. 54; 1 Bish. Crimi. Pro. §§ 142, 738; U. S. v. Kilpatrick, 16 Fed. Rep. 769; King v. Justices, 1 Black. 467.) The order appealed from is a final order in a special proceeding involving a substantial right, and as such is appealable to this court. (Matter of Atty.-Gen., 155 N. Y. 441; Matter of Cooper, 22 N. Y. 67; Belknap v. Waters, 11 N. Y. 477; People v. Glen, 173 N. Y. 395; People v. Naughton, 38 How. Pr. 435; Clem v. State, 33 Ind. 418; Crannor v. Smith, L. R. [4 Exch.] 146; Christal v. Kelly, 88 N. Y. 290; Hatch v. C. Nat. Bank, 78 N. Y. 490; U. S. v. Farrington, 5 Fed. Rep. 345; U. S. v. Coolidge, 2 Wall. 367.)

Franklin A. Coles, District Attorney, for respondent.

*Per Curiam.* On the 11th of December, 1903, a grand jury in attendance at the County Court of Nassau county made a presentment, by which, after alleging certain facts, they censured the board of supervisors of said county then in office for " not seeing to it that the minutes of their proceedings were regularly entered and posted in a minute book kept for that purpose by their clerk, and that the minutes of the proceedings of the former board were not written up and posted to date." No indictment was found against the board of supervisors, or any member thereof.

A motion was made by the persons composing the board of supervisors to set aside said presentment, upon the ground that the allegations of fact contained therein were untrue; that the censure was unjust; that although they were held out as guilty of criminal conduct they had had no opportunity to meet the accusation, and that such a presentment had no warrant in law. They supported the motion by an affidavit made by one

of their number in behalf of all. The motion was opposed by the district attorney, and, although no affidavit was read in opposition, it was denied by the County Court. The supervisors appealed to the Appellate Division of the Supreme Court, where the order of the County Court was affirmed, and they now come here.

Assuming that the County Court, from its inherent power over its own records, was authorized to entertain the motion, the appeal to this court at least was taken without authority. The Court of Appeals has no jurisdiction except such as is conferred by Constitution or statute. (Croveno v. Atlantic Avenue R. R. Co., 150 N. Y. 225, 228.) ˙ We have jurisdiction to review a judgment of death by direct appeal from the trial court, but all other appeals must be taken from judgments or orders of the Appellate Division of the Supreme Court. The right of appeal in civil actions and proceedings is governed by sections 190 and 191 of the Code of Civil Procedure, and in criminal actions and proceedings by sections 515 to 533 of the Code of Criminal Procedure. These provisions are exclusive, and unless they authorize an appeal to this court we have no jurisdiction.

The motion in question was not made in an action either civil or criminal, for none was pendiing. It was not the commencement of a special proceeding of a civil nature because it was not a prosecution by a party. (Code Civ. Pro. §§ 3333, 3334.) It was not a proceeding or special proceeding of a criminal nature authorized by the Code of Criminal Procedure. (Code Cr. Pro. part 6, titles 1-11, §§ 773-952.) The appeal was not taken from a judgment or order as authorized by section 519, nor " from a final determination affecting a substantial right of the defendant," because there was no defendant. (Code Cr. Pro. § 519.) It was not authorized by any statute and, hence, was not authorized at all. The motion involved no right of a party to a civil or criminal action or proceeding, but was an application to the County Court to do what it might

have done upon its own motion and was in the nature of a suggestion that the court should exercise its control over its records by striking therefrom a paper alleged to be scandalous. Such a motion does not involve a legal right of an individual, but the right of the court itself to keep its own records free from matters of an immaterial or improper character.

As there is no inherent right of appeal and none is allowed by statute from such an order as was made by the Appellate Division we are compelled to dismiss the appeal.

CULLEN, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur; GRAY, J., absent.

Appeal dismissed.


## APPEALS GENERALLY CONSIDERED.

The closing words of the opinion (*supra*), to the effect that the right of appeal is not inherent, suggest some thoughts upon the subject of criminal appeals in general.

The statistics show that many appeals are taken, but that few result in reversals. The reversed cases make a brave showing in the books, inasmuch as there is rarely a reversal without an elaborate opinion, whereas affirmance after affirmance is handed down without opinion.

GAYNOR, J., speaks of 607 appeals to the Court of Appeals between 1870 and 1901, of which over 20 per cent. were reversed. He speaks, however, of 'the growing tendency to reverse for technical error without regard to the merits. (People v. Doody, 34 Misc. 463, 15 N. Y. Crim. 425.)

According to the writer's figures, since the passage of L. 1887, chap. 493, and prior to Jan. 1, 1906, the total of direct appeals to the Court of Appeals in capital cases has been 146. (Vols. 108 N. Y. to 183 N. Y. inclusive.) Of these only 26 have been reversed; slightly less than 18 per cent. Each appeal has been reckoned, although in 6 of the cases, a second appeal was taken. Four of the second appeals resulted in affirmances; so that the effective percentage of reversals is even less than as above stated.

The cases may be further divided as follows: New York county affirmances, 51; reversals, 7; total, 58. Kings county affirmances, 14; reversals, 2; total, 16. Other counties, affirmances, 55; reversals, 17; total, 72. The two Kings county cases which were reversed were Greenwall and McElvaine, each of which was subsequently affirmed. Kings county has, therefore, in one sense, a clean record. The foregoing figures take no

account of the large percentage of appeals that are taken but never come on for argument. The records in New York county supply this deficiency and make it plain that probably 50 per cent. of the appeals are taken merely for delay.

The New York county figures now to be given comprise merely appeals by defendants from judgments of conviction, and include appeals pending when Mr. Jerome took office upon Jan. 1, 1902, and those subsequently taken.

### I. Appeals to App. Div.

[Pending Jan. 1, 1902, and taken prior to Jan. 1, 1905.]

The record is: Dismissed, abandoned, &c., 100; Affirmed, 83; Reversed, 19; Pending, 9. Total, 211. Thus hardly 50 per cent. ever came on for argument, and less than 9 per cent. of the total have, as yet, resulted in reversals.

Appeals taken during 1905 are not included, as too many of them remain undisposed of. The figures for that year are: Dismissed, abandoned, &c., 17; Affirmed, 6; Reversed, 2; Pending, 31. Total, 56.

### II. Appeals to Ct. App.

These figures include appeals from the Appellate Division and also direct appeals in capital cases. The appeals from the Appellate Division involve merely appeals taken by defendants from judgments of the Appellate Division affirming judgments of conviction. The figures include all appeals pending Jan. 1, 1902, or taken subsequently up to and including Jan. 1, 1906, and decided prior to Jan. 1, 1906.

Appeals from Appellate Division. The results are: Abandoned, dismissed, &c., 3; Affirmed, 32; Reversed, 7; Pending, 4. Total, 46.

Appeals in capital cases. These results are unique: Affirmances, 12; Reversals, 0; Pending, 4. Total, 16.

To avoid any misapprehension, the writer repeats that these New York county figures involve no appeals from interlocutory proceedings, such as orders, demurrers, or the like, and do not include any appeals taken by the District Attorney's office. The figures, taken as a whole, show clearly that the efforts of defendants to upset their convictions have not met even with reasonable success.

These figures, taken by themselves, justify the inference that the average attorney has no comprehension of the limitations of the process of appeal, and certainly but little appreciation of the small chance of reversing a conviction. They also justify the inference that in a multitude, if not in a majority of instances, appeals are deliberately resorted to for the purpose of delay and to defeat justice. If we turn from these figures to the opinions of the courts, these inferences will be strongly confirmed.

In almost every appeal that is taken the defendant seeks to reverse his conviction upon the facts. This series of reports must contain at least

500 reiterations of the rule that an appellate court will not ordinarily interfere with the verdict of a jury where there is evidence to support it, and where no passion, prejudice, partiality or corruption is shown.

Again, appeals are taken from all sorts of determinations as though the right of appeal were inherent. The main case (*supra*) points out that it is not inherent.

The courts have repeatedly declared that right of appeal is not inherent, but exists, if at all, only where some specific statute allows it. As to this see generally: People v. Hovey, 30 Hun, 354, 1 N. Y. Crim. 324; People v. Trezza, 128 N. Y. 529, 8 N. Y. Crim. 291; People v. Mitchell, 142 N. Y. 639, 9 N. Y. Crim. 206; People v. Mayhew, 151 N. Y. 607, 12 N. Y. Crim. 112; People ex rel. Commrs. v. Cullen, 151 N. Y. 54, 12 N. Y. Crim. 205; People v. Rutherford, 47 App. Div. 209, 14 N. Y. Crim. 426.

In a recent case it was claimed that the right was guaranteed by the Constitution, but this absurd claim was effectively disposed of. (People v. Dunn, 31 App. Div. 139, 13 N. Y. Crim. 263, aff'd 157 N. Y. 528, 13 N. Y. Crim. 491. See, also, on this point, People v. Rutherford, *supra*.)

In capital cases, where the notice of appeals acts as a stay and the people pay the expenses, the Court of Appeals has observed that " the unlimited license thus given to criminals to create delay and expense is invariably availed of," and that the " large majority " of appeals in capital cases are without merit. (People v. Loppy, 128 N. Y. 629, extract only, 8 N. Y. Crim. 318.) As far as the writer is aware, the only death sentence which, of late years, has not been carried up for review was that of Czolgosz, the assassin of President McKinley. His failure to appeal excited widespread comment. In one case counsel had the impertinence to submit no brief and make no argument, but wrote, in substance, that they could point out no error in the record. The court too mildly rebuked this scandalous appeal. (People v. Scott, 153 N. Y. 40, 12 N. Y. Crim. 374.)

In an earlier case the court spoke of vexatious appeals taken " for no possible purpose except delay;" and, in rebuking counsel, said; "It ought to be a subject of inquiry, therefore, whether they can thus become the allies of the criminal classes, and the foes of organized society, without exposing themselves to the disciplinary powers of the Supreme Court." (People v. Jugigo, 128 N. Y. 589, 8 N. Y. Crim. 306.)

The Court of Appeals now possesses the power of stimulating the honor of counsel in capital cases, by indirection, through their pockets. In a recent case the conviction was affirmed after an uncalled for delay of two years. (People v. Triola, 174 N. Y. 324.) Counsel then applied for compensation, but the court refused the application on the ground that their service had been to " hinder and delay the administration of the law." (People v. Triola, 175 N. Y. 407.)

Other cases may be noticed in which the tactics of counsel are condemned, as for instance: Where ambiguous or misleading exceptions are

sought to be given a strained construction (People v. Hughes, 137 N. Y. 29, 37, 9 N. Y. Crim. 277, 283); so of an exception to a charge which did not fairly call the court's attention to the precise error complained of (Henze v. People, 82 N. Y. 611; People v. Cannon, 139 N. Y. 645, 10 N. Y. Crim. 541); so of tactics by which the defendant himself goaded the prosecution into errors for which the defendant was really responsible (People v. Hallen, 48 App. Div. 39, 14 N. Y. Crim, 256, aff'd 164 N. Y. 565, no opin.); or where the defendant lay by and permitted an irresponsive answer, speculating upon the chances of its being satisfactory (People v. Chacon, 102 N. Y. 669, 4 N. Y. Crim. 173); or where a question was excluded as unintelligible, and it appeared that counsel was "more anxious for an exception than to state the question so that it should be understood." (People v. Spencer, 179 N. Y. 408, 18 N. Y. Crim. 536.)

These instances all illustrate the general principle that an appellate court will not consider matters not passed upon by the trial court. "Fairness towards the prisoner does not require unfairness to the trial court, and we cannot here, to reverse a judgment, put upon that court a ruling which it was not asked to make and did not make." (People v. Hughes, supra.)

Notice should also be taken of the occasions upon which the courts have rebuked counsel for submitting misleading and unfair briefs. (People v. O'Neil, 48 Hun, 36, 43, 5 N. Y. Crim. 302, 329; People v. Hoch, 150 N. Y. 291, 300, 11 N. Y. Crim. 488, 495; People v. White, 176 N. Y. 331, 347, 17 N. Y. Crim. 538, 554.)

Although the New York system of criminal appeals is hardly calculated to promote swift and sure justice, it cannot be expected that the Legislature will ever radically revise it. We must look to the judges so to administer the privilege as not to deny justice to the people. This they can effect by a discreet exercise of their power to grant stays after conviction. No one who has had even a slight experience with the administration of the criminal law can doubt for a moment that an ill-judged policy of liberality in the matter of granting stays is responsible for much of the needless delay with which the system of appeal is attended.

One of the Appellate Divisions has declared that "the granting of certificates of reasonable doubt upon convictions in criminal cases has become by far too common. The result has been in many cases to create unreasonable delay and to impede the course of justice." (People v. Lyons, 29 App. Div. 174, 13 N. Y. Crim. 108.) Like expressions will be found in other cases. (People v. Hess, 6 Misc. 246, 9 N. Y. Crim. 19; People v. Kent, 41 Misc. 191, 17 N. Y. Crim. 461.)

HERRICK, J., justly points out that it is usually impossible to tell whether an alleged error will authorize the expectation of a reversal unless it is considered in the light of the entire record. (People v. Hess, supra.) The mere fact that there has been error in a trial affords no reason for

supposing that the judgment will be reversed. A casual examination of some recent Court of Appeals opinions will demonstrate this. (People v. Sutherland, 154 N. Y. 345, 12 N. Y. Crim. 495; People v. Conklin, 175 N. Y. 333, 17 N. Y. Crim. 414; People v. Silverman, 181 N. Y. 235, *infra*, p. 360; People v. Patrick, 182 N. Y. 131, *infra* p. 136, particularly the dissenting opinion of CULLEN, Ch. J., at p. 218, *infra* p. 229.)

It is the practice of many judges, however, to grant stays with great liberality. Various cases illustrating this practice are referred to in notes in this series. (See notes, vol. 3, at p. 116; vol. 9, at p. 22; vol. 12, at p. 272.)

The note in vol. 12 is appended to the case of People v. Valentine, 19 Misc. 555, 12 N. Y. Crim. 269, which is, perhaps, the most cited of all these cases. It is interesting to observe that the errors which the learned judge considered sufficient to justify the granting of the stay in the Valentine case turned out to be so inconsequential that the conviction was unanimously affirmed without opinion. (90 App. Div. 606; 180 N. Y. 513.) Pending the appeal, the defendant was at large for seven years.